**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 0:20-cv-60815

MAP LEGACY INC. D/B/A SIGNATURE GRAND,

    Plaintiff,

v.

ZURICH AMERICAN INSURANCE COMPANY,

    Defendant.
_____/

**COMPLAINT**

COMES NOW, Plaintiff, MAP LEGACY INC. D/B/A SIGNATURE GRAND (hereinafter "Plaintiff"), by and through the undersigned attorneys, brings this action against the Defendant, ZURICH AMERICAN INSURANCE COMPANY (hereinafter "Defendant"), and alleges the following:

**JURISDICTION AND VENUE**

1.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1332 & 1391. The parties have complete diversity of citizenship, the amount in controversy is more than $75,000.00, exclusive of costs, interest, and attorney's fees, and the events giving rise to this cause of action occurred in this District.

**PARTIES**

2.    At all material times relevant to this Complaint, Plaintiff has owned and operated the Signature Grand, a landmark South Florida reception venue located at 6900 SR 84, Davie, Broward County, Florida 33317 (hereinafter the "Subject Property"), with a reputation for hosting

elegant weddings, grand social occasions, and corporate events since 1996, and is otherwise *sui juris*.

3. Defendant has been and is now a surplus lines insurance carrier with its principle place of business in the State of New York authorized to insure all properties located in the State of Florida, including properties located in Broward County, Florida, and is otherwise *sui juris*.

## THE INSURANCE POLICY

4. In consideration for the premiums paid to it, Defendant issued Plaintiff a valid, binding, and enforceable policy of insurance bearing Policy Number CPO 7443960 01 (hereinafter the "Subject Policy").  A true and correct copy of the Subject Policy is attached hereto and incorporated herein as **Exhibit "A."**

5. The Subject Policy is an "all risk" insurance policy that covers all losses to the Subject Property that are not otherwise expressly excluded.

6. The Subject Policy was and is effective between the dates of August 8, 2019, and August 8, 2020.

## THE CORONAVIRUS PANDEMIC

7. "Coronaviruses are a family of viruses that can cause illnesses such as the common cold, severe acute respiratory syndrome (SARS) and Middle East respiratory syndrome (MERS). In 2019, a new coronavirus was identified as the cause of a disease outbreak that originated in China" designated as SARS-CoV-2 also known as the 2019 Novel Corona Virus or COVID-19 (hereinafter "COVID-19").[1]

---

[1] Mayo Clinic, Coronavirus Disease 2019 (COVID-19), https://www.mayoclinic.org/diseases-conditions/coronavirus/symptoms-causes/syc-20479963.

8. On March 9, 2020, Florida Governor Ron DeSantis, on the recommendations of the Centers for Disease Control and Prevention ("CDC"), the State Surgeon General, and the State Health Officer, declared that a State of Emergency exists in Florida as a result of the COVID-19 outbreak.[2]

9. On March 10, 2020, Broward County issued a Declaration of Emergency due to the presence of COVID-19 posing "a clear and present threat to the health and welfare of the people of Broward County."[3]

10. On March 11, 2020, the World Health Organization announced that, due to "the alarming levels of spread and severity," the COVID-19 outbreak rose to the level of a pandemic.[4]

11. On March 13, 2020, President Donald J. Trump declared that the "COVID-19 outbreak constitutes a national emergency" and applied same retroactively to March 1, 2020.[5]

12. On March 22, 2020, Broward County issued Emergency Order 20-01 ordering the closure of all nonessential retail and commercial businesses due to "the propensity of [COVID-19] to spread person to person and also because the virus is physically causing property damage due to its proclivity to attach to surfaces for prolonged periods of time."[6]

---

[2] Office of the Governor of Florida, Executive Order Number 20-52 (March 9, 2020), https://www.flgov.com/wp-content/uploads/orders/2020/eo_20-52.pdf.

[3] Bertha Henry, Broward County Administrator, Declaration of Emergency (March 10, 2020), https://www.broward.org/coronavirus/documents/declaration-of-emergency-1.pdf.

[4] World Health Organization, WHO Director-General's Opening Remarks at the Media Briefing on COVID-19 (March 11, 2020), https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020

[5] President Donald J. Trump, Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (March 13, 2020) https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

[6] Bertha Henry, Broward County Administrator, Emergency Order 20-01 (March 22, 2020), https://www.broward.org/coronavirus/documents/berthahenryexecutiveorder20-01.pdf.

## **THE CLAIM**

13. On or about March 12, 2020, the COVID-19 pandemic caused direct physical loss and resultant/ensuing damages to the Subject Property (hereinafter the "Loss").

14. Additionally, as a result of the Loss, Plaintiff sustained a loss of business income.

15. To compound issues, the closure of all nonessential retail and commercial businesses as mandated in Broward County Emergency Order 20-01 caused additional lost business income.

16. Direct, resultant, and/or ensuing damages and/or loss of business income caused by the COVID-19 pandemic and Emergency Order 20-01 are covered under the Subject Policy.

17. Direct, resultant, and/or ensuing damages and/or loss of business income caused by the COVID-19 pandemic and Emergency Order 20-01 are not excluded from the Subject Policy.

18. Plaintiff timely notified Defendant of the Loss.

19. Defendant responded to the Loss by opening claim number 5630046766 (hereinafter the "Claim").

20. Through its adjustment of the Claim, Defendant has been afforded the opportunity to fully inspect the Loss, investigate the cause of the Loss, and quantify the amount of the Loss.

21. Ultimately, Defendant denied coverage for the Claim without inspection or investigation. A copy of the denial correspondence is attached hereto as **Exhibit "B."**

22. Plaintiff has complied with all prerequisites, whether denominated conditions precedent, duties after loss, or otherwise, to receive benefits or proceeds under the Subject Policy, or maintain the instant suit for the breach or declaration of the Subject Policy; alternatively, Defendant has waived or never had standing to assert any prerequisites, whether denominated as conditions precedent, duties after loss, or otherwise.

## COUNT I – DECLARATORY RELIEF

23. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 22 as if fully set forth herein and further state:

24. This is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201 & 2202, and Rule 57, Federal Rules of Civil Procedure.

25. The Commercial Property Definitions contained within the Subject Policy defines "microorganism"[7] as follows:

> **44. "Microorganism"** means any type or form of organism of microscopic or ultramicroscopic size including, but not limited to, "fungus", wet or dry rot, virus, algae, or bacteria, or any by-product.

*See* Exhibit "A," SG000052.

26. The Real and Personal Property Coverage Form contained within the Subject Policy contains an exclusionary provision related to "microorganisms" as follows:

> **B. EXCLUDED CAUSES OF LOSS**
>
> \*   \*   \*
>
> **12. Microorganisms**
>
> We will not pay for loss or damage consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of **"microorganisms"**, unless resulting from fire or lightning. Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.
>
> But if a result of one of these excluded causes of loss is a **"specified cause of loss"**, other than fire or lightning, we will pay that portion of the loss or damage which was solely caused by that **"specified cause of loss"**.

---

[7] Generally speaking, viruses are not considered "microorganisms" by the scientific community at large as viruses do not possess the qualities typically associated with living organisms such as responses to changes in the environment or the ability to reproduce independently; however, as the Subject Policy includes "virus" in its definition of "microorganism," viruses such as COVID-19 are to be considered "microorganisms" with regards to this particular insurance policy and cause of action.

>We will also not pay for loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that requires any insured or others to test for, monitor, clean up, remove, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **"microorganisms"**.

*See* Exhibit "A," SG000067.

27. However, the Commercial Property Coverage Part Declarations contained within the Subject Policy reflects Limits of Insurance as follows:

>**ADDITIONAL COVERAGES – LIMITS OF INSURANCE**
>
>\*   \*   \*
>
>MICROORGANSIMS                           $100,000 ANNUAL AGGREGATE
>
>MICROORGANSIMS-BUSINESS INCOME  $100,000 ANNUAL AGGREGATE

*See* Exhibit "A," SG000027

28. With regards to the additional coverages for "Microorganisms," the Additional Coverages Form contained within the Subject Policy provides as follows:

>**A. ADDITIONAL COVERAGES FORM**
>
>\*   \*   \*
>
>**14. Microorganisms**
>
>We will pay the following when **"microorganisms"** are the result of a **"covered cause of loss"**, other than fire or lightning:
>
>a. Direct physical loss of or damage to Covered Property caused by **"microorganisms"**, including the cost of removal of the **"microorganisms"**;
>
>b. The reasonable cost to tear out and replace any part of the covered building or other property needed to gain access to the **"microorganisms"**; and
>
>c. The reasonable cost of testing performed after removal, repair, replacement, or restoration of the damaged property is completed, provided there is a reason to believe that the **"microorganisms"** are still present.

> The most we will pay under this Additional Coverage in any one policy year is the Annual Aggregate Limit of Insurance shown on the Declarations for Microorganisms. Regardless of the number of claims, this Limit is the most we will pay for the total of all loss, damage, or cost, even if the **"microorganisms"** continue to be present, active, or recur.
>
> The Limit for this Additional Coverage is included in, and not in addition to, any other applicable Limits of Insurance.

*See* Exhibit "A," SG00079.

29. Additionally, with regards to the additional coverages for "Microorganisms-Business Income," the Business Income Coverage Form (Excluding Extra Expense) form contained within the Subject states as follows:

> **B. ADDITIONAL COVERAGES**
>
> \*   \*   \*
>
> **8. Microorganisms**
>
> We will pay for the actual loss of **"business income"** you sustain due to the:
>
> a. Necessary **"suspension"** of your **"operations"** from direct physical loss of or damage to Covered Property caused by **"microorganisms"** when the **"microorganisms"** are the result of a **"covered cause of loss"**; or
>
> b. Prolonged **"period of restoration"** due to the remediation of **"microorganisms"** from a covered loss.
>
> The most we will pay under this Additional Coverage in any one policy year is the Annual Aggregate Limit of Insurance shown on the Declarations for Microorganisms--Business Income. Regardless of the number of claims, this Limit of Insurance is the most we will pay for the total of all loss, even if the **"microorganisms"** continue to be present, active, or recur.

*See* Exhibit "A," SG000117-SG000118.

30. Upon information and belief, a portion of the premiums paid by the Plaintiff to the Defendant for the Subject Policy account for coverage of damages caused by microorganisms.

31. Defendant's denial of the Claim was based, in pertinent part, on the assertion that damage caused by the COVID-19 pandemic "would be excluded under the 'microorganism' exclusions" contained within the Subject Policy. *See* Exhibit "B," SG000266.

32. Based on the above-cited provisions, the policy appears to both exclude and afford coverage for damages caused by viruses as included in the definition of "microorganisms."

33. To the extent the Subject Policy contains conflicting terms regarding coverage and exclusions for damages caused by microorganisms, the terms of the Subject Policy are ambiguous.

34. As such, Plaintiff is in doubt as to its rights under the Subject Policy and whether the policy provides coverage for damages and/or a loss of business income caused by viruses such as COVID-19.

35. Defendant's actions and positions taken demonstrate an actual, present practical need for declaration from this Honorable Court.

36. This Honorable Court is permitted to determine the existence or non-existence of any right, duty, power, or privilege, or of any fact upon which the legal relationship between the parties depends.

37. The Plaintiff is entitled to have this Honorable Court remove all doubts raised by Defendant concerning the application of the facts of the Claim to the Subject Policy.

38. The declaration sought with regard to the instant controversy is of a justiciable nature, does not amount to an advisory decree, and will assist in the resolution of the controversy between the parties.

39. As a result of this dispute, it has become necessary that Plaintiff retain the services of the undersigned attorneys. Plaintiff is obligated to pay a reasonable fee for the undersigned attorneys' services in bringing this action, plus costs. Plaintiff is entitled to reimbursement of these fees and costs by the Defendant subject to Section 626.9373, Florida Statutes.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court:

A. Take jurisdiction of the subject matter and parties thereto;

B. Determine applicable laws that apply to the Subject Policy;

C. Declare that the provisions of the Subject Policy, including any ambiguities, be construed strictly and most strongly against the insurer, and liberally in favor of the insured, so as to affect the dominant purpose of coverage and/or indemnification;

D. Declare that the Subject Policy does not blanketly exclude coverage for loss caused by viruses;

E. Declare that the Plaintiff is entitled to a claim for attorneys' fees and costs against Defendant, and to determine the amount of such fees and costs to be paid to the Plaintiff inclusive of a contingency fee multiplier; and

F. Determine and declare any other material matters pertaining to the respective rights and responsibilities under the Policy, as needed to do complete justice in this case.

## COUNT II - BREACH OF CONTRACT

40. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 22 as if fully set forth herein and further state:

41. Defendant has failed and/or refused to honor the contractual coverage in the Subject Policy by failing and/or refusing to compensate Plaintiff and/or pay benefits owed under the Subject Policy for the Claim based on the Loss.

42. Plaintiff has suffered damages including, but not limited to, insurance benefits under the Subject Policy and damages from Defendant's breach of the Subject Policy.

43. Defendant's denial of the Claim refusal to pay any amounts due and owing under the Subject Policy is a breach of the insurance contract.

44. As a result of this dispute, it has become necessary that Plaintiff retain the services of the undersigned attorneys. Plaintiff is obligated to pay a reasonable fee for the undersigned

attorneys' services in bringing this action plus costs.  Plaintiff is entitled to reimbursement of these fees and costs by the Defendant subject to Section 626.9373, Florida Statutes.

45. Should Plaintiff prevail in this action, Plaintiff shall be entitled to interest as prescribed by the governing laws.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court award:

A. General compensatory damages;

B. Consequential damages;

C. Interest;

D. Attorneys' fees associated with the instant litigation, including a contingency fee multiplier;

E. Costs incurred as a result of the instant litigation; and

F. Any such other and further relief as this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, MAP LEGACY INC. D/B/A SIGNATURE GRAND, demands a trial by jury on all issues so triable.

Respectfully submitted this day, April 20, 2020.

> CASSEL & CASSEL, P.A.
> Attorneys for Plaintiff
> 4000 Hollywood Blvd.
> Suite 685-S
> Hollywood, FL 33021
> t: (954) 589-5504
> f: (954) 900-1768
> Service: pleadings@cassel.law
>
> */s/Michael A. Cassel*
> **Michael A. Cassel, Esq.**
> Florida Bar No. 97065
> */s/Hillary B. Cassel*
> **Hillary B. Cassel, Esq.**
> Florida Bar No. 31005