# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

MAP LEGACY INC. d/b/a
SIGNATURE GRAND,

               Plaintiff,

    v.

ZURICH AMERICAN
INSURANCE COMPANY,

               Defendant.

Case No.: 0:20-cv-60815

## ZURICH AMERICAN INSURANCE COMPANY'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND INCORPORATED SUPPORTING BRIEF

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................................ 2

        A.      Allegations of the Complaint ................................................................... 2

        B.      Terms of Zurich's Policy .......................................................................... 3

III.    ARGUMENT AND LEGAL AUTHORITY ......................................................... 6

        A.      Legal Standard ......................................................................................... 6

        B.      The Policy's Microorganisms Exclusion Expressly Excludes Coverage for
                Plaintiff's Claimed Loss ......................................................................... 7

                1.      According to the Policy's Plain Language, Loss or Damage Directly or
                        Indirectly Caused by a Virus Such as the COVID-19 Virus Is Not a
                        Covered Cause of Loss. ........................................................... 8

                2.      Plaintiff's Attempt to Evade the Microorganism Exclusion Fails Because
                        the COVID-19 Virus Is the *Cause* of Plaintiff's Loss, Not the *Result* of an
                        Otherwise Covered Cause of Loss ........................................... 14

        C.      Loss Or Damage Due To A Virus Is Excluded Regardless Of Any Other Cause Or
                Event That Contributes Concurrently Or Sequentially To The Loss Or Damage  16

        D.      Plaintiff's FAC Does Not Plausibly Allege Direct Physical Loss of or Damage to
                Property ................................................................................................. 17

        E.      Plaintiff Should Not Be Permitted To Amend Its Complaint Again ................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ajax Bldg. Corp. v. Hartford Fire Ins. Co.*,
 358 F.3d 795 (11th Cir. 2004) ............................................................15

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)................................................................................7

*Boxed Foods Co., LLC v. California Capital Ins. Co.*,
 -- F. Supp. 3d --, 2020 WL 6271021 (N.D. Cal. Oct. 26, 2020)............10

*Bryant v. Avado Brands, Inc.*,
 187 F.3d 1271 (11th Cir. 1999) ..............................................................2

*Burlington Ins. Co. v. Industrial Steel Fabricators, Inc.*,
 387 F. App'x 900, 904 (11th Cir. 2010) ................................................10

*Certain Underwriters at Lloyd's London v. Creagh*,
 563 F. App'x 209 (3d Cir. 2014) ..........................................................13

*Clarke v. State Farm Fla. Ins*.,
 123 So. 3d 583 (Fla. 4th DCA 2012) .....................................................13

*Davila v. Delta Air Lines, Inc.*,
 326 F.3d 1183 (11th Cir. 2003) ..............................................................7

*Diesel Barbershop, LLC. v. State Farm Lloyds*,
 No. 5:20-cv-461-DAE, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020)....................11, 12, 17

*Empire Indem. Ins. Co. v. Winsett*,
 325 F. App'x 849 (11th Cir. 2009) ........................................................17

*First Specialty Ins. Corp. v. GRS Mgt. Assocs., Inc.*,
 No. 08-81356-CIV, 2000 WL 2524613 (S.D. Fla. Aug. 17, 2009) .........13

*Founder Inst. Inc. v. Hartford Fire Ins. Co.*,
 20-CV-04466-VC, 2020 WL 6268539 (N.D. Cal. Oct. 22, 2020) ..........10

*Franklin EWC, Inc. v. Hartford Fin. Services Group, Inc.*,
 20-CV-04434 JSC, 2020 WL 5642483 (N.D. Cal. Sept. 22, 2020)........10

*Gas Kwick, Inc. v. United Pacific Ins. Co.*,
 58 F.3d 1536, 1539 (11th Cir. 1995) .....................................................10

*Gavrilides Mgmt. Co., LLC v. Michigan Ins. Co.*,
   No. 20-258-CB-C30 (Mich. Cir. Ct. Ingham Cty. July 1, 2020) ............................................12

*Grife v. Allstate Floridian Ins. Co.*,
   493 F. Supp. 2d 1249 (S.D. Fla. 2007) ................................................................................7, 10

*Hagel v. First Liberty Ins. Corp.*,
   778 F.3d 1214 (11th Cir. 2015) ..........................................................................................7, 10

*Hall v. United Ins. Co. of America*,
   367 F.3d 1255 (11th Cir. 2004) ................................................................................................20

*Hatch v. GeoVera Specialty Ins. Co.*,
   No. 6:17-cv-2142-Orl-41DCI, 2019 WL 2515926 (M.D. Fla. June 18, 2019) ......................16

*Hebert v. Bardwell*,
   No. 2011 CA 1220, 2012 WL 602128 (La. Ct. App. 1 Cir. Feb. 10, 2012) ...........................13

*Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of Am.*,
   1:20-CV-2939-TWT, 2020 WL 5938755 (N.D. Ga. Oct. 6, 2020) .........................................19

*Hillcrest Optical, Inc. v. Contl. Cas. Co.*,
   1:20-CV-275-JB-B, 2020 WL 6163142 (S.D. Ala. Oct. 21, 2020) .........................................19

*Hoefling v. City of Miami*,
   811 F.3d 1271 (11th Cir. 2016) ..................................................................................................6

*Horsley v. Feldt*,
   304 F.3d 1125 (11th Cir. 2002) ..................................................................................................6

*Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known as Syndicate PEM 4000*,
   8:20-CV-1605-T-30AEP, 2020 WL 5791583 (M.D. Fla. Sept. 28, 2020) ........................18, 19

*La Grasta v. First Union Securities, Inc.*,
   358 F.3d 840 (11th Cir. 2004) ....................................................................................................6

*LaFarge Corp. v. Travelers Indem. Co.*,
   118 F.3d 1511 (11th Cir. 1997) ..................................................................................................7

*Liberty Mut. Fire Ins. Co. v. Martinez*,
   157 So. 3d 486 (Fla. 5th DCA 2015) .......................................................................................16

*Malaube, LLC v. Greenwich Ins. Co.*,
   20-22615-CIV, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020) .................................................19

*Mama Jo's Inc. v. Sparta Ins. Co.*,
   No. 18-12887, -- F. App'x --, 2020 WL 4782369 (11th Cir. Aug. 18, 2020)..............1, 18, 19

55252752;1

*Mark's Engine Co. No. 28 Restaurant, LLC v. The Travelers Indemnity Co.*,
    2:20-cv-04423-AB-SK, 2020 WL 5938689 (C.D. Cal. Oct. 2, 2020) .................................... 10

*Mauricio Martinez, DMD, P.A. v. Allied Ins. Co.*,
    -- F. Supp. 3d --, 2020 WL 5240218 (M.D. Fla. Sept. 2, 2020) ........................................ 11, 12

*Nova Cas. Co. v. Waserstein*,
    424 F. Supp. 2d 1325 (S.D. Fla. 2006) ............................................................................ 7, 13

*Paulucci v. Liberty Mut. Fire Ins. Co.*,
    190 F. Supp. 2d 1312 (M.D. Fla. 2002) .................................................................................. 16

*Raymond H. Nahmad DDS PA v. Hartford Cas. Ins. Co.*,
    No. 1:20-cv-22833-BB (S.D. Fla. Nov. 2, 2020) .................................................................... 11

*Schiller v. Viacom, Inc.*,
    No. 1:15-cv-22129-UU, 2015 WL 13811187 (S.D. Fla. Oct. 8, 2015) ................................. 20

*Seifert v. IMT Ins. Co.*,
    -- F. Supp. 3d --, 2020 WL 6120002 (D. Minn. Oct. 16, 2020) ........................................ 10, 17

*Spellberg v. N.Y. Life Ins. Co.*,
    650 F. App'x 685 (11th Cir. 2016) ..................................................................................... 7, 10

*Travelers Cas. Ins. Co. of Am. v. Geragos and Geragos*,
    CV 20-3619 PSG (EX), 2020 WL 6156584 (C.D. Cal. Oct. 19, 2020) ................................ 10

*Turek Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    No. 20-11655, 2020 WL 5258484 (E.D. Mich. Sept. 3, 2020) .............................................. 17

*Uncork and Create LLC v Cincinnati Ins. Co., No. 2:20-cv-00401 (S.D. W. Va. Nov. 2, 2020)*
    (slip op. ) ................................................................................................................................. 18

*Urogynecology Specialist of Florida LLC, v. Sentinel Insurance Company, Ltd.*,
    No. 6:20-CV-1174-ORL-22-EJK, 2020 WL 5939172 (M.D. Fla. Sept. 24, 2020) ........... 13, 14

*Williams v. Empls. Mut. Cas. Co.*,
    845 F.3d 891 (8th Cir. 2017) ................................................................................................. 13

*Wilson v. Hartford Cas. Co.*,
    -- F. Supp. 3d. --, 2020 WL 5820800 (E.D. Pa. Sept. 30, 2020) ....................................... 10, 17

*Ziemba v. Cascade Int'l, Inc.*,
    256 F.3d 1194 (11th Cir. 2001) ............................................................................................. 20

**Rules**

Fed. R. Civ. P. 10(c) ....................................................................................................................... 6

55252752;1

Fed. R. Evid. 201(b)(2) ........................................................................................................2

Federal Rule of Civil Procedure 12(b)(6) ...........................................................................1

Rule 15(a) ..........................................................................................................................20

**Other Authorities**

Broward County's Emergency Order 20-01 ....................................................................2, 16

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Zurich American Insurance Company ("Zurich"), , hereby moves to dismiss with prejudice Plaintiff's First Amended Complaint ("FAC") for failure to state a claim.

Plaintiff seeks insurance coverage for losses allegedly sustained due to the virus that causes COVID-19 and related stay-at-home and shutdown orders.  But Zurich's Policy expressly precludes coverage "for loss or damage consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of 'microorganisms,' " and "microorganism" is specifically defined to include "virus."  Plaintiff seeks to evade this exclusion by alleging that the Policy both covers and excludes loss caused by "microorganisms," suggesting that this claimed ambiguity leads to a hopeless interpretational quagmire.  On the contrary, the Policy makes a clear distinction between microorganisms that are the *result* of another covered cause of loss (such as when a broken water pipe leaves furniture soggy, and mold or mildew results—a covered loss), and microorganisms that are the *cause* of loss themselves (such as spread of mildew in the absence of any other covered cause—an excluded loss).  Here, the presence of COVID-19 virus is alleged to be the *cause* of Plaintiff's loss, not the result of another covered cause, and so the loss at issue is plainly excluded.  No amount of artful characterization of the Policy can change this conclusion, and, indeed, Plaintiff can plead no facts that can evade the virus exclusion.

Furthermore, Plaintiff is seeking recovery under policy provisions that afford coverage only if there has been "direct physical loss of or damage to" property.  Numerous courts across the country, including many in Florida, have rejected claims like Plaintiff's because, under Florida law as elsewhere, this policy language requires actual, concrete damage—a bedrock legal principle most recently reiterated by the Eleventh Circuit in *Mama Jo's Inc. v. Sparta Ins. Co.*,

No. 18-12887, -- F. App'x --, 2020 WL 4782369, at *8 (11th Cir. Aug. 18, 2020).  As a result, Plaintiff's allegations of purely economic injury from the claimed presence of a virus do not state a plausible claim for coverage of its business income losses under Florida law.  Accordingly, this Court should grant Zurich's Motion and dismiss Plaintiff's First Amended Complaint with prejudice.

## II.     FACTUAL BACKGROUND

### A.     Allegations of the Complaint

Plaintiff alleges that "'In 2019, a new coronavirus was identified as the cause of a disease outbreak that originated in China' designated as SARS-CoV-2 also known as the 2019 Novel Corona Virus or COVID-19."  FAC ¶7.  It alleges that the governor of Florida "declared that a State of Emergency exists in Florida as a result of the COVID-19 outbreak."  *Id.* at ¶15.  It alleges that, "On March 10, 2020, Broward County issued a Declaration of Emergency due to the presence of COVID-19 posing 'a clear and present threat to the health and welfare of the people of Broward County.'"  *Id.* at ¶16.  Finally, it alleges that "On March 22, 2020, Broward County issued Emergency Order 20-01 ordering the closure of all nonessential retail and commercial businesses due to 'the propensity of [COVID- 19] to spread person to person and also because the virus is physically causing property damage due to its proclivity to attach to surfaces for prolonged periods of time.'"  *Id.* at ¶19.[1]

Plaintiff alleges that it has lost business income caused by the COVID-19 pandemic and Broward County's Emergency Order 20-01 mandating closure of all nonessential retail and

---

[1] According to the World Health Organization, the "official names" are "COVID-19" for the coronavirus disease and "SARS-CoV-2" for the virus that causes that disease.  Hyperlink: *Naming the coronavirus disease (COVID-19) and the virus that causes it*, accessed November 3, 2020. The Court may take judicial notice of these facts.  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) (district court may take judicial notice of public records and facts not reasonably subject to dispute in considering a motion to dismiss); Fed. R. Evid. 201(b)(2). For convenience, this brief refers to the virus that causes COVID-19 as the "COVID-19 virus."

commercial businesses, including Plaintiff's venue, Signature Grand.   FAC ¶¶ 19, 27-31.
Plaintiff alleges the presence of COVID-19 on its property.  *See id.* ¶¶ 27, 30.

Plaintiff alleges that Zurich issued an insurance policy providing coverage for its claims.
FAC ¶4; Policy No. CPO 7443960-01, ECF 1-1 ("Policy").  Plaintiff appears to contend in the
first two counts of the FAC that the Policy is ambiguous.  Plaintiff also claims that Zurich
breached the policy by denying coverage.  (*Id.* ¶¶ 69-74.)

According to the FAC, Zurich denied coverage for Plaintiff's claim. *See* FAC ¶ 35 (citing
ECF 1-2).  Zurich concluded that the claimed presence of COVID-19 virus does not constitute
"direct physical loss or damage" to property and, among other things, that no coverage is
available under the Policy because the "microorganisms exclusion"—which specifically
excludes loss or damage directly or indirectly caused by a "virus"—excludes coverage. *See* ECF
1-2, at 2-3.

B.      **Terms of Zurich's Policy**

The Policy contains coverage agreements for first-party property damage and related loss
(the "Property Protection Portfolio," ECF 1-1 at 2-155), as well as for general liability insurance
(*id*. at 164 *et seq.*), for business auto insurance (*id.* at 210 *et seq.*), and other coverages.  As
relevant here, the "Property Protection Portfolio" coverage covers loss of business income in
defined circumstances.

Specifically, under the "Business Income Coverage Form" the Policy provides coverage
for lost business income when the insured's premises are physically damaged due to a covered
cause of loss:

> We will pay for the actual loss of "business income" you sustain due to the
> necessary "suspension" of your "operations" during the "period of restoration".
> The "suspension" must be caused by direct physical loss of or damage to property
> at a "premises" at which a Limit of Insurance is shown on the Declarations for
> Business Income. The loss or damage must be directly caused by a "covered
> cause of loss".

Policy, ECF 1-1 at 116.

Similarly, under that form, the Policy provides coverage for lost business income when a civil authority prohibits access to the insured's premises due to direct physical loss of or damage to property within one mile of the premises, again caused by a covered cause of loss:

> We will pay for the actual loss of "business income" you sustain for up to the number of days shown on the Declarations for Civil Authority resulting from the necessary "suspension", or delay in the start, of your "operations" if the "suspension" or delay is caused by order of civil authority that prohibits access to the "premises" or "reported unscheduled premises". That order must result from a civil authority's response to direct physical loss of or damage to property located within one mile from the "premises" or "reported unscheduled premises" which sustains a "business income" loss. The loss or damage must be directly caused by a "covered cause of loss".

*Id.*[2]

The Policy defines "covered cause of loss" as "a fortuitous cause or event, not otherwise excluded, which actually occurs during this policy period." *Id.* at 47. The Policy specifically excludes as a covered cause of loss "microorganisms." Under Section B ("Excluded Causes of Loss") of the Real and Personal Property Coverage Form (*id.* at 65), the Policy states:

> **12. Microorganisms**
>
> We will not pay for loss or damage consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of "microorganisms", unless resulting from fire or lightning. Such loss or damage is excluded regardless of any other cause or event, including a "mistake", "malfunction", or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.
>
> But if a result of one of these excluded causes of loss is a "specified cause of loss", other than fire or lightning, we will pay that portion of the loss or damage which was solely caused by that "specified cause of loss".

---

[2] Similar coverage is afforded for "extra expense" the insured incurs—*i.e.*, "operating expenses you incur during the 'period of restoration' that would not have been necessary to incur if there had been no direct physical loss or damage to property," as more fully defined in the Policy. (Policy, ECF 1-1 at 50, 125.)

We will also not pay for loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that requires any insured or others to test for, monitor, clean up, remove, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of "microorganisms".

*Id.* at 67.[3]  "Microorganism" is defined as "any type or form of organism of microscopic or ultramicroscopic size including, but not limited to, "fungus", wet or dry rot, ***virus***, algae, or bacteria, or any by-product."  *Id.* at 52 (emphasis added).

As noted, the Policy also provides limited coverage for lost business income when operations are suspended due to direct physical loss or damage to covered property caused by microorganisms, if the microorganisms are the *result* of an otherwise covered cause of loss.  The "Business Income Coverage Form" provides:

**8. Microorganisms**

We will pay for the actual loss of "business income" you sustain due to the:

a. Necessary "suspension" of your "operations" from direct physical loss of or damage to Covered Property caused by "microorganisms" when the "microorganisms" are the result of a "covered cause of loss"; or

b. Prolonged "period of restoration" due to the remediation of "microorganisms" from a covered loss.

The most we will pay under this Additional Coverage in any one policy year is the Annual Aggregate Limit of Insurance shown on the Declarations for Microorganisms--Business Income. Regardless of the number of claims, this Limit of Insurance is the most we will pay for the total of all loss, even if the "microorganisms" continue to be present, active, or recur.

Policy, ECF 1-1 at 117-18.  This additional coverage is subject to an annual aggregate limit of liability of $100,000—a small limit compared to the $6.5 million limit applicable to business interruption due to other causes.  *Id.* at 23, 27.  Similarly, under the "Additional Coverages

---

[3] Under the exclusion, if a "specified cause of loss" results from microorganisms, loss or damage from that "specified cause of loss" is not excluded.  The term "specified cause of loss" includes things like explosion, windstorm, and riot or commotion.  Policy, ECF 1-1 at 61-62.  None of the "specified causes of loss" is at issue here.

- 5 -

Form" (*id.* at 74), the Policy provides coverage for direct physical loss of or damage to covered property when microorganisms are the *result* of an otherwise covered cause of loss:

### 14. Microorganisms

We will pay the following when "microorganisms" are the result of a "covered cause of loss", other than fire or lightning:

a. Direct physical loss of or damage to Covered Property caused by "microorganisms", including the cost of removal of the "microorganisms";

b. The reasonable cost to tear out and replace any part of the covered building or other property needed to gain access to the "microorganisms"; and

c. The reasonable cost of testing performed after removal, repair, replacement, or restoration of the damaged property is completed, provided there is a reason to believe that the "microorganisms" are still present.

The most we will pay under this Additional Coverage in any one policy year is the Annual Aggregate Limit of Insurance shown on the Declarations for Microorganisms. Regardless of the number of claims, this Limit is the most we will pay for the total of all loss, damage, or cost, even if the "microorganisms" continue to be present, active, or recur.

The Limit for this Additional Coverage is included in, and not in addition to, any other applicable Limits of Insurance.[4]

## III.   ARGUMENT AND LEGAL AUTHORITY

### A.   Legal Standard

This Court on a motion to dismiss should consider "the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *See La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," including the Court's consideration of a motion to dismiss. Fed. R. Civ. P. 10(c); *see Horsley v. Feldt,* 304 F.3d 1125, 1134-35 (11th Cir. 2002). Moreover, to the extent that any of a party's allegations conflict with the exhibit, "the exhibit controls." *Hoefling v. City of Miami*, 811 F.3d 1271, 1277

---

[4] The limit of liability for this additional coverage when microorganisms are the result of an otherwise covered cause of loss is an annual aggregate limit of $100,000.  ECF 1-1 at 27.

(11th Cir. 2016).   Furthermore, legal conclusions in a complaint are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). In fact, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

Under Florida law, the insured has the initial burden of proving that its claim falls within the policy's affirmative grant of coverage.  The insurer has the burden of proving an exclusion applies.   *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir. 1997). Accordingly, to state a valid cause of action, Plaintiff's Complaint must allege ultimate facts that bring its claims within the Policy's coverage.

Moreover, Florida courts interpret insurance contracts as a matter of law, construing insurance policy terms "in accordance with the plain language of the policies as bargained for by the parties … and the plain language of the policy will be given the meaning it clearly expresses." *Nova Cas. Co. v. Waserstein*, 424 F. Supp. 2d 1325, 1333 (S.D. Fla. 2006) (citations omitted); *Spellberg v. N.Y. Life Ins. Co*., 650 F. App'x 685, 688 (11th Cir. 2016) ("Where the language in an insurance contract is plain and unambiguous, a [Florida] court must interpret the policy in accordance with the plain meaning so as to give effect to the policy as written."); *Hagel v. First Liberty Ins. Corp*., 778 F.3d 1214, 1220 (11th Cir. 2015) ("In interpreting insurance policies, Florida courts start with the plain language of the policy as bargained for by the parties.  If that language is unambiguous, it governs."). Dismissal is appropriate where an insurance policy unambiguously excludes coverage of a claimed loss. *Grife v. Allstate Floridian Ins. Co*., 493 F. Supp. 2d 1249, 1251 (S.D. Fla. 2007).

### B.    The Policy's Microorganisms Exclusion Expressly Excludes Coverage for Plaintiff's Claimed Loss

Plaintiff concedes, as it must, that coverage under the Policy must be premised on a "covered cause of loss."    *See* FAC ¶¶ 21, 27, 39, 40.   And one of the specifically listed

"Excluded Causes of Loss" is the presence, growth, proliferation, spread, or any activity of virus, as stated in the microorganism exclusion.

Whereas Plaintiff's original Complaint centered on the Policy's Real and Personal Property Coverage Form and the Business Income Coverage Form, the FAC appears to have pivoted to the Policy's additional coverage for microorganism damage.  Plaintiff apparently seeks this Court's assistance in transforming this limited additional coverage (with a maximum limit of liability of $100,000) to a catch-all for all business income losses caused by the COVID-19 virus and pandemic up to the Policy's full limit.  FAC ¶ 61.  But this additional coverage does not apply here because it is expressly limited to circumstances where microorganisms "*are the result*" of an otherwise "covered cause of loss."  Plaintiff's FAC, on the other hand, clearly alleges that the COVID-19 virus is the *cause* of its loss.  And because the Policy excludes the presence, growth, proliferation or spread of a virus as a covered cause of loss, the Policy affords no coverage for Plaintiff's claims.

1. **According to the Policy's Plain Language, Loss or Damage Directly or Indirectly Caused by a Virus Such as the COVID-19 Virus Is Not a Covered Cause of Loss.**

Plaintiff seeks coverage for "damages and/or loss of business income caused by the presence of COVID-19 which occurred as a result of the COVID-19 pandemic and Emergency Order 20-01 et seq."  FAC ¶¶ 30-31.  *See also id.* ¶ 27 (alleging the COVID-19 pandemic as the purported "covered cause of loss").  Unlike the original complaint, the FAC references only the "additional coverages" relating to "microorganisms"—but, as noted, these provisions, too, require a "covered cause of loss."[5]

---

[5]Plaintiff appears to have abandoned in the FAC (at least overtly) seeking coverage under the Policy's "Real and Personal Property Coverage Form" and the "Business Income Coverage Form," other than the specific "additional coverages" for microorganism damage.  In the "Real and Personal Property Coverage Form," Zurich agreed as follows, "We will pay for direct physical loss of or damage to 'real property' and 'personal property' at a 'premises' directly

The Policy defines the term "covered cause of loss" as "a fortuitous cause or event, *not otherwise excluded*, which actually occurs during this policy period."  Policy, ECF 1-1 at 47 (emphasis added), cited in FAC ¶ 21.  Under "Excluded Causes of Loss," the Real and Personal Property Form identifies "microorganisms" as an excluded cause of loss, specifically, "We will not pay for loss or damage consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread or any activity of "microorganisms," unless resulting from fire or lightning," *id*. at 67, and "microorganisms" is defined to include "virus," *id.* at 52.  In addition, the exclusions in the Real and Personal Property Coverage form specifically apply to the Business Income Coverage Form (with certain enumerated exceptions inapplicable here, for example, with respect to "Fine arts" or "outdoor trees").  *Id.* at 119 ("the excluded causes of loss in the REAL AND PERSONAL PROPERTY COVERAGE FORM . . . apply to loss of 'business income' caused by or result from loss of or damage to any property").  *See also id.* at 86 ("the excluded causes of loss, exclusions, terms, and conditions of the applicable Coverage Forms apply to these Additional Coverages").

The Policy thus expressly states that "microorganisms"—a term specifically defined to include viruses—are excluded as a "covered cause of loss" for purposes of establishing coverage under the Real or Personal Property Coverage Form or the Business Income Coverage Form,

---

caused by a '*covered cause of loss.*' "  Policy, ECF 1-1 at 65 (emphasis added).  Similarly, in the Business Income Coverage Form, Zurich agreed to pay for actual loss of business income for the necessary suspension of the insured's operations caused by direct physical loss of or damage to property at the insured's premises, but "The loss or damage must be directly caused by a '*covered cause of loss.*' "  *Id.* at 116 (emphasis added).  Finally, the "civil authority" coverage, under the "Additional Coverages" section of the Business Income Coverage Form, provides that Zurich will pay for actual loss of business income sustained resulting from suspension of the insured's operations caused by an order of civil authority prohibiting access to the insured's premises, if the order results from direct physical loss of or damage to property within one mile of the insured's premises, but "The loss or damage must be directly caused by a '*covered cause of loss.*' "  *Id.* (emphasis added).  As Plaintiff no longer seeks coverage under these provisions, Zurich does not address them, but no coverage is afforded under them, in any event, because the microorganism exclusion excludes the presence of "virus" as a covered cause of loss.

- 9 -

**including as respects the additional coverages cited in Plaintiff's FAC**. Although Plaintiff inexplicably suggests that the COVID-19 *virus* is not actually a virus within the meaning of the microorganisms exclusion (FAC ¶ 59), there is not a shred of law or logic to support such a tortured reading.  Indeed, adopting Plaintiff's reading would contradict Florida law.[6]

Courts in Florida and elsewhere have repeatedly upheld exclusions similar to the microorganism exclusion in the Policy.[7]  The Middle District of Florida held that a policy with a similar exclusion clearly precluded coverage for business income loss arising out of Florida's

---

[6] "Florida courts start with the plain language of the policy as bargained for by the parties.  If that language is unambiguous, it governs." *Hagel v. First Liberty Ins. Corp*., 778 F.3d 1214, 1220 (11th Cir. 2015); *Grife*, 493 F. Supp. 2d at 252 (Florida law requires that insurance contracts be interpreted according to their plain meaning, and courts "should not strain to find ambiguity when the policy's plain meaning clearly excludes coverage").  "Furthermore, courts must construe an insurance contract in its entirety, striving to give every provision meaning and effect." *Gas Kwick, Inc. v. United Pacific Ins. Co.,* 58 F.3d 1536, 1539 (11th Cir. 1995); *Spellberg*, 650 F. App'x at 688 (same).  Courts must also review an insurance policy's exclusion provisions within the context of all of the policy's provisions and reject an insured's attempt to "limit [the court's] attention to only the words it selects to make its case." *Burlington Ins. Co. v. Industrial Steel Fabricators, Inc.*, 387 F. App'x 900, 904 (11th Cir. 2010).

[7] *See, e.g., Boxed Foods Co., LLC v. California Capital Ins. Co., --* F. Supp. 3d --, 2020 WL 6271021, at *4 (N.D. Cal. Oct. 26, 2020), as amended (Oct. 27, 2020) ("The Virus Exclusion precludes coverage for any loss 'direct[ly] or indirect[ly]' caused by a virus because the Policy determined that viruses fall outside the scope of the Policy's Covered Causes of Loss"); *Founder Inst. Inc. v. Hartford Fire Ins. Co.*, 20-CV-04466-VC, 2020 WL 6268539, at *1 (N.D. Cal. Oct. 22, 2020) (granting motion to dismiss based on exclusion for loss "caused directly or indirectly by ... the ... presence, growth, proliferation, spread or any activity of ... virus"); *Travelers Cas. Ins. Co. of Am. v. Geragos and Geragos*, CV 20-3619 PSG (EX), 2020 WL 6156584, at *4 (C.D. Cal. Oct. 19, 2020) ("The Virus Exclusion Provision, which explicitly applies to civil authority coverage, also explicitly excludes loss or damage resulting from a virus"); *Seifert v. IMT Ins. Co.*, -- F. Supp. 3d --, 2020 WL 6120002, at *4 (D. Minn. Oct. 16, 2020) ("Virus or Bacteria Exclusion … precludes coverage for any loss or damage associated with a 'virus, bacterium, or other microorganism that induces or is capable of inducing physical distress, illness or disease'); *Wilson v. Hartford Cas. Co.*, -- F. Supp. 3d --, 2020 WL 5820800, at *7 (E.D. Pa. Sept. 30, 2020) (enforcing unambiguous exclusion for "loss or damage caused directly or indirectly by ... [p]resence, growth, proliferation, spread or any activity of 'fungi', wet rot, dry rot, bacteria or virus"); *Franklin EWC, Inc. v. Hartford Fin. Services Group, Inc.*, 20-CV-04434 JSC, 2020 WL 5642483, at *2 (N.D. Cal. Sept. 22, 2020) (granting motion to dismiss where "complaint repeatedly alleges that the virus caused and continues to cause the risk of direct physical loss required for a Covered Cause of Loss"); *Mark's Engine Co. No. 28 Restaurant, LLC v. The Travelers Indemnity Co.,* 2:20-cv-04423-AB-SK, 2020 WL 5938689, at *5 (C.D. Cal. Oct. 2, 2020) (enforcing exclusion for "loss or damage caused by or resulting from any virus").

shutdown orders and granted the insurer's motion to dismiss.  *Mauricio Martinez, DMD, P.A. v. Allied Ins. Co.*, -- F. Supp. 3d --, 2020 WL 5240218 (M.D. Fla. Sept. 2, 2020).  There, as here, the policy afforded coverage for business income caused by a "covered cause of loss."  *Id.* at *1. But, as the court stated, "[T]he policy contains an exclusion for loss or damage caused 'directly or indirectly,' by '[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.' "  *Id.* at *2.  The court concluded, "Because Martinez's damages resulted from COVID-19, which is clearly a virus, neither the Governor's executive order narrowing dental services to only emergency procedures nor the disinfection of the dental office of the virus is a 'Covered Cause of Loss' under the plain language of the policy's exclusion."  *Id*.  The court dismissed the case **with prejudice**.  *Id.* at 6; *see also Raymond H. Nahmad DDS PA v. Hartford Cas. Ins. Co.*, No. 1:20-cv-22833-BB (S.D. Fla. Nov. 2, 2020) (slip op.).

Applying the same logic as in *Mauricio Martinez*, the Western District of Texas also granted a motion to dismiss brought by an insurer in a case involving claimed losses for closure of business due to the COVID-19 pandemic.  *Diesel Barbershop, LLC. v. State Farm Lloyds*, No. 5:20-cv-461-DAE, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020).  The policy there contained a virus exclusion stating, in part, "We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events . . . : Virus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease."  2020 WL 4724305 at *3.  The court held that this exclusion clearly applied to the claim for lost business income arising out of business shutdown orders due to COVID-19: "While the Orders technically forced the Properties to close to protect public health, the Orders only came about sequentially as a result of the COVID-19 virus spreading rapidly throughout the community. Thus, it was the presence of COVID-19 in Bexar County and in Texas that was the

- 11 -

primary root cause of Plaintiffs' businesses temporarily closing." *Id.* at *6. As in *Mauricio Martinez*, the court granted the insurer's motion to dismiss ***without leave to amend***, finding any attempt to amend would be futile. *Id.* at *7.

The Circuit Court of Ingham County, Michigan, ruled that a similar virus exclusion applied to exclude coverage for claims by two restaurants predicated on the COVID-19 pandemic and/or the related executive closure orders issued by the Governor of Michigan. *Gavrilides Mgmt. Co., LLC v. Michigan Ins. Co.*, No. 20-258-CB-C30 (Mich. Cir. Ct. Ingham Cty. July 1, 2020).[8] As the court said in rendering its decision at oral argument:

> [D]irect physical loss of or damage to property has to be something with material existence. Something that is tangible. Something . . . that alters the physical integrity of the property. The complaint here does not allege any physical loss of or damage to the property. The complaint alleges a loss of business due to executive orders shutting down the restaurants for dining, for dining in the restaurant due to the COVID-19 threat.

Trans. of Hearing at 18:24 – 19:17. As here, the plaintiff claimed that the virus exclusion did not apply, because the claimed loss was due to civil authority orders, not a virus. The court rejected that argument and rejected the claim that the exclusion was "vague." See Exhibit 1 at 21:16. Responding to the policyholder's argument that the virus exclusion was vague, the court said, "The plaintiff has not adequately explained how the term virus is vague. And in fact, supplies a completely workable, understandable, usable definition of the word virus." *Id.* at 20:21-24. The court continued:

> The argument in this regard really seems to be more that the virus exclusion doesn't apply. And it goes something like this as far as I can tell. . . . the damage caused here was really caused by actions of the civil authority to protect public health. And then third, therefore, coverage for acts of any person, group, organization or governmental body applies. But that argument brings us right back to the direct physical loss or damage requirement. Again, going back to the

---

[8] The transcript of the hearing and the court's order are attached hereto as Exhibits 1 and 2, respectively.

cause of loss special form B, as in boy, exclusions provides that acts of government are only covered when they result in a covered cause of loss.

*Id.* at 20:24-21:12.  The court dismissed the complaint without leave to amend." *Id.* at 23:7-11.

Numerous decisions enforce similar exclusions, including under Florida law.  *E.g.*, *Nova Cas. Co.*, 424 F. Supp. 2d at 1334-35 (Florida law; finding plain language of policy's pollutant exclusion excluded "living organisms," microbial populations," and "microbial contaminants" from coverage because they fit definition of "contaminant" in the policy); *Clarke v. State Farm Fla. Ins*., 123 So. 3d 583, 584-85 (Fla. 4th DCA 2012) (affirming decision that the plain language of policy's communicable disease exclusion expressly excluded injuries from the HSV virus from coverage); *First Specialty Ins. Corp. v. GRS Mgt. Assocs., Inc*., No. 08-81356-CIV, 2000 WL 2524613, at *5 (S.D. Fla. Aug. 17, 2009) (ruling plain language of insurance policy's pollutant exclusion excluded coverage of injuries due to Coxsackie virus, "a viral contaminant and a harmful microbe" found in insured's swimming pool).[9]

In the sole federal case to date to deny a motion to dismiss based on the virus exclusion, the parties apparently failed to provide the court with the entire policy.  *See Urogynecology Specialist of Florida LLC, v. Sentinel Insurance Company, Ltd*., No. 6:20-CV-1174-ORL-22-EJK, 2020 WL 5939172, at *4 (M.D. Fla. Sept. 24, 2020) ("Without the corresponding forms which are modified by the exclusions, this Court will not make a decision on the merits of the

---

[9] *See also Williams v. Empls. Mut. Cas. Co*., 845 F.3d 891, 905-06 (8th Cir. 2017) (finding plain language of insurance policy's pollution exclusion excluded contaminants radium and coliform bacteria from coverage); *Certain Underwriters at Lloyd's London v. Creagh*, 563 F. App'x 209, 211 (3d Cir. 2014) (affirming that insurance policy's microorganism exclusion that barred claims "directly or indirectly arising out of or relating to: mold, mildew, fungus, spores or other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health" excluded coverage for damage due to bodily fluids discharged from a dead body that contained bacteria); *Hebert v. Bardwell*, No. 2011 CA 1220, 2012 WL 602128, at *5 (La. Ct. App. 1 Cir. Feb. 10, 2012) (affirming grant of insurer's summary judgment motion because "[t]he language of the policy clearly exclude[d] from coverage the transmission of a virus and the exposure to a virus from the definition of 'bodily injury' ").

- 13 -

plain language of the Policy to determine whether Plaintiff's losses were covered"). The *Urogynecology* decision is therefore not pertinent or helpful to this Court, which has available to it the entire Policy issued to Plaintiff.

Because all of the coverages available under the Policy require that loss or damage be caused by a "covered cause of loss," and because all of Plaintiff's claimed losses are caused by, directly or indirectly, the COVID-19 virus, there is no "covered cause of loss," and Plaintiff's FAC fails to state a claim against Zurich. Therefore, the Court should dismiss Plaintiff's FAC with prejudice.

> **2.      Plaintiff's Attempt to Evade the Microorganism Exclusion Fails Because the COVID-19 Virus Is the *Cause* of Plaintiff's Loss, Not the *Result* of an Otherwise Covered Cause of Loss**

Plaintiff seeks to plead its way around the microorganism exclusion primarily by invoking limited additional coverage for loss or damage due to microorganisms, when they are the result of an otherwise covered cause of loss. FAC ¶¶ 39-44. Plaintiff suggests that the fact that the Policy has both a microorganism exclusion and limited coverage for microorganism damage makes it inconsistent or ambiguous, such that the Policy should be interpreted in favor of coverage. *Id.*

This Court should reject Plaintiff's attempt to evade the microorganism exclusion by injecting confusion or ambiguity into the Policy where there is none. The Policy makes a very clear distinction between cause and result when it comes to loss or damage associated with microorganisms. When microorganisms are the cause of loss or damage, they are an excluded cause of loss, and no coverage is available. But when an otherwise covered cause of loss occurs that results in microorganism damage—for example, a water pipe breaks, causing water damage and resulting mildew damage—the policy affords coverage, subject to a $100,000 sublimit for the microorganism damage. All of the coverage provisions in the Policy that extend coverage for

microorganism-related damage make clear that they apply only when microorganisms "are the *result* of a 'covered cause of loss.'"   Policy, ECF 1-1 at 79 (Additional Coverages Form) (emphasis added); *id.* at 117 (Business Income Coverage Form).  Microorganisms themselves are not a "covered cause of loss," because these coverage forms make clear that what is an "Excluded Cause of Loss" still applies.   *Id.* at 74 (Additional Coverages Form; *id.* at 119 (Business Income Coverage Form).

An insurance policy is not ambiguous simply because it grants coverage in some circumstances and excludes coverage in others, as that is "the very nature of an insurance contract." *Ajax Bldg. Corp. v. Hartford Fire Ins. Co.*, 358 F.3d 795, 798-99 (11th Cir. 2004). Indeed, the Policy's terms do not conflict, and there is no ambiguity. When the microorganism provisions Plaintiff cites as the source of ambiguity are read within the context of the entire insurance contract, as they must be, giving every provision meaning and effect, the Policy's terms are harmonious. The plain language of the Policy provides limited coverage for "microorganisms" when they are the result of an otherwise covered cause, but excludes viruses such as the SARS-CoV-2 virus when they are the cause of loss themselves. A *cause* of loss or damage cannot also be the *result* of loss or damage—to suggest otherwise, as Plaintiff does, is absurd.  Unless the microorganism additional coverage is triggered subject to its $100,000 annual aggregate sublimit, there is never—in this policy by its plain terms—any coverage for microorganisms including virus.  Nor should the fact that the Policy affords a policyholder a limited $100,000 additional coverage (when those terms are met) nullify in any respect the rest of the terms of policy.

Accordingly, there is no basis for Plaintiff's effort to sow confusion over what the Policy covers and does not cover with respect to microorganisms.  As applied here, there is no question as to how the COVID-19 virus is implicated in Plaintiff's claimed losses: Plaintiff directly

- 15 -

alleges "Direct, resultant, and/or ensuing damages and/or loss of business income *caused by* the *presence* of COVID-19 which occurred as a result of the COVID-19 pandemic and Emergency Order 20-01." Compl. ¶¶30, 31 (emphasis added). Because Plaintiff alleges that its losses were *caused by* the *presence of* COVID-19 virus and resulting pandemic, it pleads an excluded cause of loss, and it does not plead that virus damage resulted from some other cause that is covered. The Court therefore should reject Plaintiff's claim that the Policy covers its loss here under coverage provisions applicable to "microorganisms" or that the Policy is somehow ambiguous.

### C.   Loss Or Damage Due To A Virus Is Excluded Regardless Of Any Other Cause Or Event That Contributes Concurrently Or Sequentially To The Loss Or Damage

The microorganism exclusion contains an "anti-concurrent causation" clause which provides:

> Such [virus] loss or damage is excluded regardless of any other cause or event, including a "mistake", "malfunction", or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

Policy, ECF 1-1 at 67 (emphasis added).). Therefore, even if Plaintiff claims that its claimed loss was caused by a shutdown order rather than the virus, that order contributed with the COVID-19 virus "concurrently or in any sequence to the loss," and the microorganism exclusion still excludes "virus" as an excluded cause of loss.

Florida courts routinely enforce anti-concurrent causation clauses. *Paulucci v. Liberty Mut. Fire Ins. Co.*, 190 F. Supp. 2d 1312, 1319-20 (M.D. Fla. 2002) (concluding "…that, under Florida law, parties can contract around the concurrent cause doctrine through an express anti-concurrent cause provision.")[10]; *see also Hatch v. GeoVera Specialty Ins. Co.,* No. 6:17-cv-2142-Orl-41DCI, 2019 WL 2515926, at *4 (M.D. Fla. June 18, 2019) (same); *Liberty Mut. Fire Ins.*

---

[10] In *Paulucci*, the anti-concurrent cause language was similar to the language here: "Such 'loss' is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the 'loss.'" 190 F. Supp. 2d at 1317.

*Co. v. Martinez*, 157 So. 3d 486, 487 n.1 (Fla. 5ᵗʰ DCA 2015) (same).  Notably, in the first-party context, the Eleventh Circuit, applying Florida law, has held that the plain language of a policy that excluded coverage for mold "regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage," excluded application of Florida's efficient proximate cause doctrine to mold claims and, thus, the insurer did not have a duty to defend and indemnify the insured in a lawsuit brought by renters who alleged that the insured's failure to build a vapor barrier caused their mold-related damages and injuries.  *Empire Indem. Ins. Co. v. Winsett*, 325 F. App'x 849, 851-52 (11th Cir. 2009).

In *Diesel Barbershop*, the court applied a similar anti-concurrent causation clause, concluding that "the [shutdown] Orders only came about sequentially as a result of the COVID-19 virus spreading rapidly throughout the community," making the Virus Exclusion still applicable.  2020 WL 4724305 at *6.  *Accord Seifert*, 2020 WL 6120002, at *4 ("the virus exclusion would extend 'to all losses where a virus is part of the causal chain'") (citing *Turek Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 20-11655, 2020 WL 5258484, at *8–9 (E.D. Mich. Sept. 3, 2020)); *Wilson*, 2020 WL 5820800, at *8 ("Even assuming that the governmental closure orders are a separate cause of loss, the virus exclusion would still bar coverage because of the anti-concurrent causation clause in the virus exclusion").

In summary, Plaintiff alleges facts placing the losses squarely within the ambit of the microorganism exclusion.  Accordingly, Plaintiff's claim fails as a matter of law, and this Court should grant Zurich's Motion and dismiss the FAC with prejudice.

### D.      Plaintiff's FAC Does Not Plausibly Allege Direct Physical Loss of or Damage to Property

The two microorganism damage coverage provisions cited in Plaintiff's FAC each requires "direct physical loss of or damage to" property caused by microorganisms, but only when they *are the result* of a covered cause of loss.  *See* FAC ¶¶ 25, 26.  Indeed, this baseline

55252752;1

requirement of direct physical loss of or damage to property is a thread running through all of the coverage provisions relating to business income losses, including those for which Plaintiff apparently no longer seeks coverage. See p.4 above.   In an attempt to meet this Policy requirement, Plaintiff's FAC (at ¶ 27) asserts that "the COVID-19 pandemic, a fortuitous event meeting the criteria of a 'covered cause of loss,' resulted in the presence of COVID-19 at the Subject Property which, in turn, caused direct physical loss and resultant/ensuing damages."

Plaintiff's claim fails as a matter of law because "Florida law and the plain language of the Policies reflect that actual, concrete damage is necessary," and the mere presence of a substance that can be removed with normal cleaning is not covered. *Infinity*, 2020 WL 5791583, at *3 (citing *Mama Jo's Inc. v. Sparta Ins. Co.*, -- F. App'x --, 2020 WL 4782369, at *8 (11th Cir. Aug. 18, 2020)).   In *Mama Jo's*, for example, dust and debris from nearby road construction physically migrated to plaintiff's restaurant, requiring regular cleaning, turning away customers and diminishing the restaurant's business—**yet this was insufficient to establish direct physical loss of or damage to property**. *Id.*   The court held that the injuries were purely economic, *i.e.*, the cost of cleaning and the business losses, but these were not caused by direct physical loss or damage as required under the policy. *Id.* ("an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical'").[11]   *See also Uncork and Create LLC v Cincinnati Ins. Co.*, No. 2:20-cv-00401 (S.D. W. Va. Nov. 2, 2020) (slip op. at 8-9) (finding alleged "actual presence of the virus" insufficient to state a claim for direct physical loss of or damage to property "[b]ecause routine cleaning, perhaps performed with greater frequency and care, eliminates the virus on surfaces").

---

[11] The CDC has determined that COVID-19 virus can be eradicated with standard household cleaners.

- 18 -

So, too, here, Plaintiff has not pleaded plausible facts showing actual, concrete damage separate and apart from its purely economic losses from the COVID-19 related governmental orders. Numerous district courts in the Eleventh Circuit, including in Florida, have followed *Mama Jo's* to hold that purely economic losses to business shut down or impaired by COVID-19 governmental orders are not "direct physical loss of or damage to" property. *See, e.g., Hillcrest Optical, Inc. v. Contl. Cas. Co.,* 1:20-CV-275-JB-B, 2020 WL 6163142, at *5 (S.D. Ala. Oct. 21, 2020) (rejecting insured's argument that "temporary inability to use property due to governmental intervention constituted a direct physical loss of property"); *Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of Am.*, 1:20-CV-2939-TWT, 2020 WL 5938755, at *6 (N.D. Ga. Oct. 6, 2020) (holding that Georgia Governor's Executive Order did not create a "direct physical loss of" the Plaintiffs' dining rooms and noting that plaintiffs' "interpretation of the contractual language exceeds any reasonable bounds of possible construction, pushing the words individually and collectively beyond what any plain meaning can support"); *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known as Syndicate PEM 4000*, 8:20-CV-1605-T-30AEP, 2020 WL 5791583, at *4 (M.D. Fla. Sept. 28, 2020); *Malaube, LLC v. Greenwich Ins. Co.*, 20-22615-CIV, 2020 WL 5051581, at *7 (S.D. Fla. Aug. 26, 2020).[12]

Plaintiff argues (without justification) that the Policy is ambiguous, but in reality the Policy simply does not cover the claimed losses. As the Court concluded in *Infinity*, 2020 WL 5791583, at *5, while expressing great sympathy for "Plaintiff and all insureds that experienced economic losses associated with COVID-19":

> There is simply no coverage under the policies if they require "direct physical loss of or damage" to property. Here, there is no … coverage because the Amended

---

[12] And these cases are in addition to dozens of cases nationwide concluding that similar insurance policies do not cover business interruption losses arising out of the COVID-19 virus and dismissing similar complaints as a matter of law. A listing of these cases, and copies of unreported slip opinions, is attached as Exhibit 3.

55252752;1

Complaint fails to allege facts describing how the Property suffered any actual physical loss or damage. It is also apparent that any amendment would be futile under these circumstances.

### E.     Plaintiff Should Not Be Permitted To Amend Its Complaint Again

After Zurich filed a motion for judgment on the pleadings, Plaintiff sought and was granted leave to file the FAC, so it has already had an opportunity to cure any flaw in its pleading.  But neither the original complaint, nor the FAC, nor any other amended complaint can cure that flaw because the unambiguous, plain language of the Policy excludes the COVID-19 virus as a "covered cause of loss."  In addition, no amount of artful pleading by Plaintiff can convert the purported presence of COVID-19 on its premises into the "direct physical loss of or damage to" property that the Policy requires.  The Court should, therefore, deny any request by Plaintiff that it be permitted to amend its Complaint again.  *Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1262-63 (11th Cir. 2004) (affirming denial of motion to amend complaint because of futility and noting "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile."); *Schiller v. Viacom, Inc*., No. 1:15-cv-22129-UU, 2015 WL 13811187, at *9 (S.D. Fla. Oct. 8, 2015) (finding amendment of complaint would be futile because "a more carefully drafted complaint would still fail to state a claim") (citing *Ziemba v. Cascade Int'l, Inc*., 256 F.3d 1194, 1213 (11th Cir. 2001) ("[I]f a more carefully drafted complaint could not state a claim, dismissal with prejudice is proper.") (citations omitted)).

**WHEREFORE,** this Court should dismiss the FAC with prejudice for failure to state a claim.

Respectfully submitted,

**AKERMAN LLP**
Attorneys for Defendant
Three Brickell City Centre
98 Southeast 7th Street, Suite 1100
Miami, FL  33131
Phone: (305) 374-5600
Fax: (305) 374-5095

By:_____s/ Gary J. Guzzi_____
       GARY J. GUZZI
       Florida Bar No.: 159440
       e-mail: gary.guzzi@akerman.com
       Secondary e-mail: maria.revoredo@akerman.com
       GIDEON REITBLAT
       Florida Bar Number: 36388
       E-mail: gideon.reitblat@akerman.com

       ANTHONY W. MORRIS
       Admitted *Pro Hac Vice*
       999 Peachtree Street NE
       Suite 1700
       Atlanta, GA  30309
       Phone:  (404) 733-9809
       Fax:  (404) 733-9909
       e-mail:  anthony.morris@akerman.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I electronically filed the foregoing with the Clerk of the Court this  3rd day of November, 2020 by using the CM/ECF system which will send a notice of electronic filing to the following: Michael A. Cassel, Esq., and Hillary B. Cassel, Esq., Cassel & Cassel, P.A., 4000 Hollywood Blvd., Suite 685-S, Hollywood, FL 33021 (pleadings@cassel.law).

                      s/ Gary J. Guzzi
       _____
                      Attorney

- 21 -

55252752;1