UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 20-60815-CIV-SINGHAL

MAP LEGACY, INC.,
d/b/a SIGNATURE GRAND,

    Plaintiff,

v.

ZURICH AMERICAN INSURANCE
COMPANY,

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court on the Zurich American Insurance Company's Motion to Dismiss for Failure to State a Claim and Incorporated Supporting Brief ("Motion to Dismiss") (DE [32]). Plaintiff filed its response in opposition to the motion ("Response") (DE [34]). Defendant has since filed a reply. The Court has also considered the Notice of Supplemental Authority (DE [36]) and the response (DE [37]). Accordingly, the matter is ripe for review.

**I.    BACKGROUND**

Plaintiff Map Legacy, Inc. ("Plaintiff") owns and operates the Signature Grand, a landmark South Florida reception venue located at 6900 SR 84, Davie, Broward County, Florida 33317 (the "Subject Property"). Zurich American Insurance Company ("Defendant") issued Plaintiff a valid, binding, and enforceable policy of insurance bearing Policy Number CPO 7443960 01 (the "Subject Policy"). "The Subject Policy is an 'all risk'

insurance policy that covers all losses to the Subject Property that are not otherwise expressly excluded."  (Am. Compl. (DE [31]), ¶ 5).

In March 2020, the federal, state, and local governments declared an emergency due to the pandemic resulting from the SARS-CoV-2 virus ("COVID-19").  On March 22, 2020, Broward County issued an emergency order requiring the closure of all nonessential retail and commercial businesses due to "the propensity of [COVID-19] to spread person to person and also because the virus is physically causing property damage due to its proclivity to attach to surfaces for prolonged periods of time."  Broward Cnty. Er. Order 20-01.

Plaintiff alleges the Subject Property sustained direct physical loss and resultant damage because of the ongoing COVID-19 pandemic.  The Subject Policy purportedly requires Defendant to pay for all losses sustained by "covered causes of loss," which is defined as "a fortuitous cause or event, not otherwise excluded, which actually occurs during this policy period."  (Am. Compl. (DE [31]), ¶ 21).  Following the denial of its insurance claim, Plaintiff filed this action for declaratory relief and breach of contract.

Defendant moves to dismiss the Amended Complaint (DE [31]) for failure to state a claim upon which relief can be granted.  Defendant further argues this action must be dismissed because the Subject Policy expressly precludes coverage "for loss or damage consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of 'microorganisms,'" and "microorganism" is specifically defined to include "virus."  (Mot. to Dis. (DE [32]), at 7).  And, finally, Defendant argues Plaintiff fails to sufficiently allege any facts to support its cause of action for breach of contract.

2

In opposition, Plaintiff argues Defendant's arguments are premature and better suited for summary judgment because the parties have conflicting interpretations of the policy. Plaintiff claims it has sufficiently alleged direct physical loss and civil authority coverage because it was forced to suspend operations because of COVID-19.

## II.  LEGAL STANDARD

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions . . . a formulaic recitation of the cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombev v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Courts must review the complaint in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). However, pleadings that "are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework

of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also id.* at 663 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

Regarding insurance policies, under Florida law, "insurance contracts are construed according to their plain meaning," and "[a]mbiguities are construed against the insurer and in favor of coverage." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005). "[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 291 (Fla. 2007) (quoting *Taurus Holdings*, 913 So. 2d at 532). If a term is undefined in a policy, a court "may consult references commonly relied upon to supply the accepted meanings of words." *See id.* at 291–92; *see also Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1188 (11th Cir. 2002) ("Because none of the terms in that provision are defined in the policy, we accord each its ordinary meaning.") (citation omitted). The court must "look at the policy as a whole and give every provision its full meaning and operative effect." *Hyman*, 304 F.3d at 1186 (citations omitted).

### III. <u>POLICY PROVISIONS</u>

Defendant argues the Subject Policy makes a clear distinction between microorganisms that are the result of another covered cause of loss (such as when a broken water pipe leaves furniture soggy, and mold or mildew results—a covered loss), and microorganisms that are the cause of loss themselves (such as spread of mildew in the absence of any other covered cause—an excluded loss). Plaintiff, on the other hand, alleges the Subject Policy both covers and excludes loss caused by "microorganisms,"

suggesting this claimed ambiguity leads to a hopeless interpretational quagmire. The provisions at issue are as follows:

The Commercial Property Definitions contained within the Subject Policy defines "microorganism" as follows:

> **44. "Microorganism"** means any type or form of organism of microscopic or ultramicroscopic size including, but not limited to, "fungus", wet or dry rot, virus, algae, or bacteria, or any by-product.

See (DE [1-1], SG000052, ¶ 44).[1]

The Real and Personal Property Coverage Form contained within the Subject Policy contains an exclusionary provision related to "microorganisms" as follows:

> **B. EXCLUDED CAUSES OF LOSS**
> * * *
> **12. Microorganisms**
> We will not pay for loss or damage consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of **"microorganisms"**, unless resulting from fire or lightning. Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.
> But if a result of one of these excluded causes of loss is a **"specified cause of loss"**, other than fire or lightning, we will pay that portion of the loss or damage which was solely caused by that **"specified cause of loss"**.
> We will also not pay for loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that requires any insured or others to test for, monitor, clean up, remove, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **"microorganisms"**.

---

[1] The insurance policy attached to the Complaint (DE [1-1]) is 263 pages in length and appears to have Bates stamped page numbers in the lower right corner formatted as SG000xxx. The Bates stamped numbers correspond exactly with the CM/ECF printed page number of DE [1-1].

*See* (DE [1-1], SG000067, ¶ 12).

The Commercial Property Coverage Part Declarations contained within the Subject Policy, however, reflects Limits of Insurance of $100,000 for Microorganisms and $100,000 for Microorganism-Business Income. *See* (DE [1-1], SG000027).

With regards to the additional coverages for "Microorganisms," the Additional Coverages Form contained within the Subject Policy provides as follows:

> **A. ADDITIONAL COVERAGES FORM**
>   \* \* \*
> **14. Microorganisms**
> We will pay the following when **"microorganisms"** are the result of a "covered cause of loss", other than fire or lightning:
> a. Direct physical loss of or damage to Covered Property caused by **"microorganisms"**, including the cost of removal of the **"microorganisms"**;
> b. The reasonable cost to tear out and replace any part of the covered building or other property needed to gain access to the **"microorganisms"**; and
> c. The reasonable cost of testing performed after removal, repair, replacement, or restoration of the damaged property is completed, provided there is a reason to believe that the **"microorganisms"** are still present. The most we will pay under this Additional Coverage in any one policy year is the Annual Aggregate Limit of Insurance shown on the Declarations for Microorganisms. Regardless of the number of claims, this Limit is the most we will pay for the total of all loss, damage, or cost, even if the **"microorganisms"** continue to be present, active, or recur.
> The Limit for this Additional Coverage is included in, and not in addition to, any other applicable Limits of Insurance.[2]

*See* (DE [1-1], SG000079, ¶ 14).

Additionally, with regards to the additional coverages for "Microorganisms-Business Income," the Business Income Coverage Form (Excluding Extra Expense) form contained within the Subject Policy states as follows:

---

[2] The limit of liability for this additional coverage when microorganisms are the result of an otherwise covered cause of loss is an annual aggregate limit of $100,000. *See* (DE [1-1], SG000027).

>    **B. ADDITIONAL COVERAGES**
>    * * *
>    **8. Microorganisms**
>    We will pay for the actual loss of **"business income"** you sustain due to the:
>    a. Necessary **"suspension"** of your **"operations"** from direct physical loss of or damage to Covered Property caused by **"microorganisms"** when the **"microorganisms"** are the result of a **"covered cause of loss"**; or
>    b. Prolonged **"period of restoration"** due to the remediation of **"microorganisms"** from a covered loss.
>    The most we will pay under this Additional Coverage in any one policy year is the Annual Aggregate Limit of Insurance shown on the Declarations for Microorganisms--Business Income. Regardless of the number of claims, this Limit of Insurance is the most we will pay for the total of all loss, even if the **"microorganisms"** continue to be present, active, or recur.

*See* (DE [1-1], SG000117-SG000118, ¶ 8).

**IV.    DISCUSSION**

In support of dismissal, Defendant argues the Subject Policy specifically excludes any damages caused by COVID-19 under the exclusion related to "microorganisms" within the Subject Policy. Plaintiff disagrees and argues the Subject Policy also contains sub-limits of insurance specifically for damages caused by "microorganisms" when same are the result of a "covered cause of loss." Additionally, Plaintiff argues neither it nor Defendant, nor this Court, ever dealt with COVID-19 as a global pandemic let alone as a cause of loss in the context of an insurance claim. It is this distinction that gives this Court pause, particularly because the Eleventh Circuit has not yet squarely addressed these policy terms in the context of damages resulting from COVID-19. *But see Mama Jo's Inc. v. Sparta Insurance Co.*, 823 Fed. Appx. 868 (11th Cir. 2020) (construing "direct physical loss of or damage to" terms in the pre-pandemic context, which further supports dismissal at this time); *see also 15 oz Fresh & Healthy Food, LLC v. Underwriters at Lloyd's London*

7

*Known as Syndicates AML 2001, WBC 5886, MMX 2010, and SKB 1897,* 2021 WL 896216 (S.D. Fla. Feb. 22, 2021).

As an initial matter, the Court aligns itself with other courts that have granted motions to dismiss complaints for failure to state a claim related to COVID-19 losses. *See, e.g.*, *Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*, 2020 WL 6392841, at *5 (S.D. Fla. Nov. 2, 2020) (collecting cases). Thus, contrary to Plaintiff's assertion, Defendant's arguments are not premature at this stage.

Defendant argues dismissal is warranted because Plaintiff is seeking recovery under policy provisions that afford coverage only if there has been "direct physical loss of or damage to" the insured property and purely economic interruptions in business caused by COVID-19 do not satisfy the Subject Policy's plain and ordinary meaning under Florida law. The Subject Policy, however, does not define what constitutes "direct physical loss of or damage to" the insured property. The Court must give these terms their plain and ordinary meaning. *See Hyman*, 304 F.3d at 1188. The plain language of the business income and extra expense provisions "require[] direct physical loss or damage to the . . . premises in order to trigger payment." *See Lubell & Rosen, LLC v. Sentinel Ins. Co., Ltd.*, 2016 WL 8739330, at *4 (S.D. Fla. June 10, 2016) (construing a business income provision with the same language requiring "direct physical loss of or physical damage to the property"). Coverage does not exist where an insured "fail[s] to plead facts showing physical property damage" caused by COVID-19 government shutdown orders. *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known as Syndicate PEM 4000*, 2020 WL 5791583, at *4 (M.D. Fla. Sept. 28, 2020) (collecting cases).

8

In *Mama Jo's*, like here, the policy generally covered "direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss." *Id.* at 871 (omission in original). The business income and extra expense provision stated that the insurer would pay for "the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration,'" and the "'suspension' must be caused by direct physical loss of or damage to covered property." *Id.* The insured submitted a claim for dust and debris generated by nearby roadway construction, which required the insured to use its normal cleaning methods but also resulted in a decrease in customer traffic to the restaurant. *Id.* The district court granted the insurer's motion for summary judgment, concluding that the insured "failed to establish that it suffered a direct physical loss that would trigger coverage." *Id.* at 870.

On appeal, the Eleventh Circuit affirmed the district court's ruling on the general coverage claim for cleaning, holding, "under Florida law, an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" *Id.* at 879 (citations omitted) ("A direct physical loss contemplates an actual change in insured property."). The Eleventh Circuit explained:

> Florida's District Court of Appeal[] for the Third District has addressed the definition of "direct physical loss": "A 'loss' is the diminution of value of something [ ]. Loss, Black's Law Dictionary (10th ed. 2014). 'Direct' and 'physical' modify loss and impose the requirement that the damage be actual."

*Id.* (alteration in original) (quoting *Homeowners Choice Prop. & Cas. v. Maspons*, 211 So. 3d 1067, 1069 (Fla. 3d DCA 2017)). Because the insured's public adjuster testified that "'cleaning and painting' was all that was required" to resolve the dust and debris and that

9

there was no need to remove or replace any items from the restaurant at that time, there was no direct physical loss under Florida law. *Id.*

Similarly, with respect to the business income provision, the Eleventh Circuit further held that even if the insured had shown that its operations were suspended, it failed to establish "that it suffered a direct physical loss of or damage to its property." *Id.* "Conceivably, a slowdown caused by closing parts of the restaurant for cleaning could be attributed to a 'period of restoration.'" *Id.* at 880. Nevertheless, the Eleventh Circuit concluded that the insurer was entitled to summary judgment in its favor because the insured failed to show that its suspension of operations was "caused by direct physical loss of or damage to property." *Id.*

The Middle District of Florida has extended *Mama Jo's* to the COVID-19 context and ruled that both Florida law and the policy's plain language—"direct physical loss of or damage to property"—require "actual, concrete damage" to trigger coverage. *Infinity Exhibits*, 2020 WL 5791583, at *3. This Court recognizes the distinction between the construction dust and debris in *Mama Jo's* and the presence of a deadly virus, which has substantially changed the world; however, it finds the application of *Mama Jo's* is appropriate at this time as there is no binding case law on the effect of COVID-19. *See, e.g.*, *Rococo Steak, LLC v. Aspen Specialty Ins. Co.*, 2021 WL 268478, at *6 (M.D. Fla. Jan. 27, 2021); *Island Hotel Props., Inc. v. Fireman's Fund Ins. Co.*, 2021 WL 117898, at *3 (S.D. Fla. Jan. 11, 2021); *Mena Catering, Inc. v. Scottsdale Ins. Co.*, 2021 WL 86777, at *7 (S.D. Fla. Jan. 11, 2021); *Edison Kennedy, LLC v. Scottsdale Ins. Co.*, 2021 WL 22314, at *5–6 (M.D. Fla. Jan. 4, 2021); *Emerald Coast Rests., Inc. v. Aspen Specialty Ins. Co.*, 2020 WL 7889061, at *2 (N.D. Fla. Dec. 18, 2020); *Prime Time Sports Grill, Inc.*

*v. DTW 1991 Underwriting Ltd.*, 2020 WL 7398646, at *6 (M.D. Fla. Dec. 17, 2020); *SA Palm Beach LLC v. Certain Underwriters at Lloyd's, London*, 2020 WL 7251643, at *5 (S.D. Fla. Dec. 9, 2020); *El Novillo Rest. v. Certain Underwriters at Lloyd's, London*, 2020 WL 7251362, at *6 (S.D. Fla. Dec. 7, 2020); *Raymond H Nahmad DDS PA*, 2020 WL 6392841, at *8.; *but see Urogynecology Specialist of Fla. LLC v. Sentinel Ins. Co., Ltd.*, 2020 WL 5939172, at *4 (M.D. Fla. Sept. 24, 2020) (denying insurer's motion to dismiss and declining to "make a determination of coverage at this stage" because the entire policy was not provided to the court, and there was not yet "binding case law on the issue of the effects of COVID-19 on insurance contracts virus exclusions").

Plaintiff alleges Broward County, Florida and the State of Florida enacted various executive orders which ordered the closures of all restaurants due to "the propensity of [COVID-19] to spread person to person and also because the virus is **physically causing property damage** due to its proclivity to attach to surfaces for prolonged periods of time." (Am. Compl. (DE [31]), 19) (quoting Broward Cnty. Er. Order 20-01, at 2) (emphasis added). This is not a statement of Florida insurance law, is not a judicial or administrative finding, and is not binding on this Court.

Plaintiffs' argument that the Subject Property did not remain open or accessible to the public because the presence of COVID-19 makes an event space uninhabitable and unsuitable for its intended purposes does not establish the physical loss or damage required by the Policy. "[U]nder Florida law, loss of use of property for its intended purposes does not constitute 'direct physical loss.'" *Café La Trova, LLC v. Aspen Specialty Ins. Co.,* 2021 WL 602585, at *8 (S.D. Fla. Feb. 16, 2021). "While Plaintiff argues that a loss of functionality of, access to, or intended use of the [property]

11

constitutes physical loss or damage, it is not supported by the plain language of the Policy or Florida law." *Atma Beauty, Inc. v. HDI Global Specialty SE,* 2020 WL 7770398 (S.D. Fla. Dec. 30, 2020).  Furthermore, this is a conclusory statement that does not plausibly establish physical loss or damage as defined by Florida law.  There is no actual change in the insured property alleged.  Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Zurich American Insurance Company's Motion to Dismiss for Failure to State a Claim and Incorporated Supporting Brief (DE [32]) is **GRANTED**.  This cause shall stand **DISMISSED WITHOUT PREJUDICE**.  The Clerk of Court is directed to **CLOSE** this case and **DENY AS MOOT** any pending motions.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 31st day of August 2021.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished to counsel of record via CM/ECF